JUSTICE RICE,
concurring in part and dissenting in part.
¶110 I concur with the Court’s decision to reverse on the punitive damages issue, but I would likewise reverse on the issue of compensatory damages, because the District Court’s evidentiary rulings permitted the Malcolms to make unfair use of the FMVSS 213 *355 test results-the very same use which the District Court prohibited by Evenflo.
fill I agree with the Court’s analysis distinguishing between products liability and negligence claims, and agree that evidence regarding the manufacturer’s compliance with applicable regulations should not be generally admissible in products liability cases, as such evidence would improperly inject principles of negligence law, such as reasonableness and level of care, into a “strict” liability matter. Accordingly, I concur with the Court’s rejection of Section 4(b) of the Restatement (Third) of Torts.
¶112 I further agree that the demonstrable observations and findings from the FMVSS 213 testing of models 206 and 207 were relevant and admissible in this case, such as cracks, rips and tears in the seat shell, belt hook breakage under stress, and such outcomes. The Malcolms laid a sufficient foundation to show that the 206 and 207 models were substantially similar, and the District Court did not abuse its discretion by determining that the information would be relevant to determining Evenflo’s liability. Opinion, ¶ 57. And, as against such observations and findings, the District Court properly denied Evenflo’s effort to introduce evidence that the OMW seat had actually “passed,” or received a passing result on, the FMVSS 213 testing. Such an overgeneralized response by Evenflo would have been irrelevant or overly prejudicial to the Malcolms.
¶113 However, the District Court did not require the Malcolms to stop there. The District Court did not limit Malcolms to introducing evidence of the product stresses, as listed above, which occurred during testing. Rather, the court allowed Malcolms to characterize these findings in a manner favorable to their case, permitting Malcolms to repeatedly tell the jury that the OMW seat had Tailed” the testing. Then, the court denied Evenflo’s effort to counter this characterization by introducing evidence that the OMW seat had, in fact, “passed” the testing. From Malcolms’ one-sided characterization of the testing, the jury took to deliberations a simple, powerful, yet fundamentally untrue proposition: that the OMW seat had Tailed” mandatory testing. While the efficacy of the FMVSS 213 testing can certainly be debated, nonetheless, the truth is, the OMW seat had actually passed that testing. The District Court later reasoned that the testing results had “nothing to do” with the particular design issues in this case, but, if that was true, then the court should not have allowed Malcolms to introduce evidence that Evenflo had Tailed” the testing.
¶114 Thus, the District Court inflicted upon Evenflo the very *356 prejudice from which it had protected Malcolms. But, the District Court went even further. After permitting Malcolms to introduce oral and written evidence using the over-generalized and prejudicial term “test failures,” and denying a response by Evenflo to that characterization, the court then permitted Malcolms to argue to the jury, over Evenflo’s objection, that Evenflo had failed to offer evidence to the contrary. This was untrue, and the District Court thus permitted Malcolms to make an unfair argument.
¶115 Evenflo attempted to squeeze a couple references to “passing” the tests into the trial, but was not permitted to actually offer that evidence or argue it. As the Court acknowledges and describes, the District Court’s evidentiary rulings ‘impeded”Evenflo’s defense, ‘left Evenflo with a difficult task,”and made Evenflo’s burden “even more onerous.” Opinion, ¶ 86. Nonetheless, the Court dismisses Evenflo’s arguments, concluding the rulings were proper when viewed ‘through the lens of Montana’s strict liability law.” The Court thus justifies the unfairness of the District Court’s evidentiary rulings by citing to the unique nature of products liability law. However, though a manufacturer in a product case indeed carries a heavy burden, the trial must still be conducted fairly and evenhandedly, and the rules of evidence applied justly. Here, they were not. There cannot be one set of evidentiary rules for a plaintiff, and a different set of rules for a defendant, even in a products liability case. Montana Rule of Evidence 106 and the related ‘completeness doctrine’ permit the opposing party to introduce the other part of the evidence ‘if it is needed to make the primary evidence understandable.” State v. Elliott, 2002 MT 26, ¶ 65, 308 Mont. 227, 43 P.3d 279 (citation omitted). The District Court unfairly prejudiced Evenflo by allowing the Malcolms to characterize the test results as ‘failures” without permitting Evenflo to offer the other side of the story. See Mont. R. Evid. 403; Hall v. Big Sky Lumber & Supply, 261 Mont. 328, 853 P.2d 389 (1993). I thus agree with Evenflo’s argument that the District Court’s ruling on the FMVSS 213 testing was not fairly applied.
¶116 I would reverse for a new trial on both compensatory and punitive damages.